# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

DONALD CODY TARBELL,

              Petitioner,

v.

VICKI JANSSEN, Warden,

              Respondent.

Case No. 19-CV-1040 (NEB/DTS)

**REPORT AND RECOMMENDATION**

---

Marnie E. Fearon, GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A., for petitioner Donald Cody Tarbell.

Andrew T. Jackola, ANOKA COUNTY ATTORNEY'S OFFICE, for respondent Vicki Janssen.

---

Petitioner Donald Cody Tarbell pleaded guilty in 2014 to one count of criminal vehicular homicide. "The district court accepted Tarbell's guilty plea and sentenced him to 81 months but stayed the sentence for ten years. As conditions of the stayed sentence, Tarbell was ordered to serve 365 days in the county jail, placed on probation for ten years, and ordered to pay a fine and restitution." *State v. Tarbell*, No. A18-0349, 2018 WL 4558238, at *1 (Minn. Ct. App. Sept. 24, 2018). "The conditions also prohibited him from taking mood-altering chemicals, using or possessing a firearm, driving without a valid license or insurance, or receiving a traffic-related charge, including any misdemeanor or serious traffic violations." *Id.*

1

A few months after being released from jail, Tarbell violated the conditions of his probation by driving a vehicle without insurance and without a valid driver's license.  *Id.*  "The district court stated that it could execute the 81-month sentence based on Tarbell's probation violation but instead executed 30 days in jail, as an intermediate sanction, to be served in three ten-day increments."  *Id.*  The sentence also came with a stern warning from the district court: "Mr. Tarbell, don't be back in front of me even with a misdemeanor conviction for something. . . .  Succeed. Don't be back."  *Id.*

But Tarbell came back.  In September 2017, Tarbell tested positive for marijuana use.  *See Tarbell*, 2018 WL 4558238, at *1.  This time, the district court revoked Tarbell's probation and executed the 81-month sentence (with credit for time spent in jail), which Tarbell continues to serve today.

This matter is before the Court on Tarbell's petition for a writ of habeas corpus.  *See* 28 U.S.C. § 2254.  In his habeas petition, Tarbell asserts a single ground for relief: "In revoking probation the district court erred in determining the need for confinement outweighed the policies favoring probation when appellant had reformed his life but had committed two technical probation violations." Petition at 5 [ECF No. 1].  This Court finds that Tarbell's claim is not cognizable on habeas review insofar as it seeks relief under state law, and that Tarbell has failed to fully exhaust state remedies with respect to any claim arising under federal law. Accordingly, it is recommended that Tarbell's habeas petition be denied and this matter be dismissed.

Tarbell's petition lays at the intersection of two core principles of federal habeas corpus jurisprudence.  First, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *accord* 28 U.S.C. § 2241(c)(3).  Put simply, the Court cannot grant Tarbell's habeas petition on the basis that the Minnesota courts erred in applying Minnesota law.

Second, under 28 U.S.C. § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999).  This "fair opportunity" requires the invocation of "one

complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court. *Id.* at 845.

Tarbell sought review from the Minnesota Supreme Court following the revocation of his term of probation (and affirmance of that revocation by the Minnesota Court of Appeals). *See* ECF No. 24-2 at 57-67 (petition for review). In his petition for review, Tarbell sought relief on one ground: that the revocation of his probation and subsequent imposition of an 81-month term of imprisonment was contrary to the Minnesota Supreme Court's prior decision in *State v. Austin*, 295 N.W.2d 246 (Minn. 1980). *See* ECF No. 24-2 at 66-67.

> *Austin*'s core holding [is] that district courts must make the following three findings on the record before probation is revoked. First, courts must designate the specific condition or conditions of probation the defendant has violated. Second, courts must find the violation was inexcusable or intentional. Once a court has made findings that a violation has occurred and has found that the violation was either intentional or inexcusable, the court must proceed to the third *Austin* factor and determine whether the need for confinement outweighs the policies favoring probation.

*State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005) (citations omitted). This third *Austin* factor is satisfied if any of three sub-factors, adapted from the 1970 American Bar Association Standards for Criminal Justice, is present:

> Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:

4

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (citation and quotation omitted). In his petition for review before the Minnesota Supreme Court, Tarbell focused entirely on the third *Austin* factor in arguing that the revocation of his probation was unlawful. *See* ECF No. 24-2 at 66-67.

*Austin* is a state-court decision expounding on a matter of state law — i.e., when a term of probation imposed by a Minnesota trial court may be revoked under Minnesota law. As such, Tarbell's claim under *Austin* would appear to be a quintessential example of a ground for relief not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67. But Tarbell nevertheless argues that he may be granted federal habeas relief for two reasons. Neither reason, ultimately, is availing.

First, Tarbell notes that in expounding on the third *Austin* factor, the Minnesota Supreme Court expressly cited federal cases:

> In some cases, policy considerations may require that probation not be revoked even though the facts may allow it, but this is not such a case. The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed. There

5

must be a balancing of the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety. *Gagnon v. Scarpelli*, 411 U.S. 778, 785 (1973). The decision to revoke cannot be "a reflexive reaction to an accumulation of technical violations" but requires a showing that the "offender's behavior demonstrates that he or she 'cannot be counted on to avoid antisocial activity.'" *United States v. Reed*, 573 F.2d 1020, 1024 (8th Cir. 1978) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479 (1972)).

*Austin*, 295 N.W.2d at 250-51. Particularly, says Tarbell, the trial court in his case violated the proscription against "reflexive reaction[s] to an accumulation of technical violations," *Reed*, 573 F.2d at 1024 — a proscription that derives from a *federal* court decision.

This argument fails, though. The language from *Reed* quoted above does not purport to set out a federal constitutional standard; instead, *Reed* noted that revocation of probation for technical violations would "be inconsistent with and detrimental to the goals of the probation program" — that is, the *federal* probation statute. *Reed*, 573 F.2d at 1024. Nowhere does *Reed* state that revocation for technical violations amounts to a violation of the constitution applicable to the states. To the extent that *Austin* adopted this standard, it did so as a matter of state law, not because it was impelled to do so under federal law. And, once again, claims of state law are not cognizable on federal habeas review.[1]

---

[1] Additionally, Tarbell must demonstrate that the revocation of his probation "was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). *Reed* is not a decision of the Supreme Court, and the Supreme Court has not adopted the language from *Reed* quoted above.

The other federal-court decisions cited by *Austin*, and thus by Tarbell, are no more helpful to him. Both *Gagnon* and *Morrissey* concern the due-process rights of parolees and probationers, but those decisions relate, broadly speaking, to the first two factors later expounded upon in *Austin*. For example, in *Morrissey*, the Supreme Court identified the "minimum requirements of due process" as requiring the following for parolees:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489. *Gagnon* endorsed this list as satisfying the requirements due to probationers. 411 U.S. at 786. Neither case endorses, as a matter of constitutional law, that courts inquire into "whether the need for confinement outweighs the policies favoring probation" before revoking a term of probation, *Modtland*, 695 N.W.2d at 606 — the ground on which Tarbell sought relief in the state courts. Accordingly, the specific claim under *Austin* raised by Tarbell in his petition for review before the Minnesota Supreme Court cannot be said to arise at bottom from federal law. Tarbell challenged the revocation on the basis of state

law before the Minnesota Supreme Court; that claim is not cognizable on federal habeas corpus review.

Second, Tarbell argues in his reply brief that his revocation was unlawful for reasons *other* than the putative misapplication of the third *Austin* factor by the Minnesota courts, including the denial of his right to confront witnesses. *See* ECF No. 25 at 6-7. This claim, unlike the claim regarding the third *Austin* factor, is one that arises under federal law rather than state law. But it also is a claim that was not exhausted in the state courts. Neither Tarbell's brief before the Minnesota Court of Appeals nor his petition for review before the Minnesota Supreme Court even hints at a claim relating to confrontation of witnesses. *See* ECF No. 24-2 at 2-21, 57-67. Tarbell cannot be said to have fairly presented to the Minnesota courts any claim besides that related to the third *Austin* factor.[2]

Accordingly, it is recommended that Tarbell's petition for a writ of habeas corpus be denied and this action dismissed. Only two matters merit further comment:

First, Tarbell filed a motion for default judgment in this matter after respondent failed initially to respond to his habeas petition within the deadline set by the Court. *See* ECF No. 15. "Whether a default judgment is available in a *habeas corpus* proceeding is doubtful." *Rollen v. Steele*, No. 4:06-CV-1114, 2007

---

[2] Because these federal-law claims would have been known to Tarbell at the time of his direct appeal of the revocation, it is now too late to raise those claims in the Minnesota courts. *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976).

WL 1125711, at *1 (E.D. Mo. Mar. 26, 2007) (collecting cases). Default judgments are in general disfavored compared to dispositions on the merits, *see, e.g.*, *United States v. Morgan*, No. 17-CV-0521 (WMW/SER), 2018 WL 895883, at *1 (D. Minn. 2018), and there are especially strong reasons for avoiding resolution of habeas corpus petitions via default judgment, *see Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994). In this case, respondent sought an extension of time not long after this Court's original deadline in which to file an answer; that request was granted, and the answer was filed within the extended deadline set by this Court. Although respondent's delay was unfortunate, it was relatively minimal, and the issues presented in Tarbell's habeas petition have now been fully briefed and presented to the Court. The interests of justice lie in favor of resolving Tarbell's habeas petition on the merits. It is recommended that his motion for default judgment be denied.

Second, a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the United States Court of Appeals for the Eighth Circuit, would treat Tarbell's current

habeas corpus petition differently than it is being treated here.  Tarbell has not

identified, and this Court cannot discern, anything novel, noteworthy or worrisome

about this case that warrants appellate review.  It is therefore recommended that

Tarbell should not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings

herein, IT IS HEREBY RECOMMENDED THAT:

1.      The petition for a writ of habeas corpus of petitioner Donald Cody

Tarbell [ECF No. 1] be DENIED.

2.      This matter be DISMISSED.

3.      Tarbell's motion for default judgment [ECF No. 15] be DENIED.

4.      No certificate of appealability be issued.

Dated: September 30, 2019              s/David T. Schultz_____
                                       DAVID T. SCHULTZ
                                       United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment
of the District Court and is therefore not appealable directly to the Eighth Circuit
Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections
to a magistrate judge's proposed finding and recommendations within 14 days
after being served a copy" of the Report and Recommendation.  A party may
respond to those objections within 14 days after being served a copy of the
objections.  *See* Local Rule 72.2(b)(2). All objections and responses must comply
with the word or line limits set forth in Local Rule 72.2(c).